RENDELL, Circuit Judge,
dissenting.
I would affirm the District Court’s ruling on the grounds that the annuities that Sanner and Claypoole purchased were not purchased for an investment purpose, but, rather, were purchased in order to qualify for benefits. In addition, they were not actuarially sound. Therefore, they should be counted as resources for the purpose of the Medicare eligibility determination as outlined in the DRA.
The State Medicaid Manual “serves as the official HHS interpretation of the law and regulations.” Pa. Dep’t of Pub. Welfare v. U.S. Dep’t of Health & Human Servs., 647 F.3d 506, 509 (3d Cir.2011). It specifically recognizes that annuities “are occasionally used to shelter assets so that individuals purchasing them can become eligible for Medicaid.” Transmittal 64, § 3258.9(B). The Manual mandates that “a determination must be made with regard to the ultimate purpose of the annuity (i.e., whether the purchase of the annuity constitutes a transfer of assets for less than fair market value).” Id. We cannot ignore that language, and must therefore consider whether the annuities here were investments. Thus, I take issue with the majority’s statement that motive is not determinative. It is an essential consideration. I conclude that the annuities were not investments. The short payback period for the annuities purchased by Sanner and Claypoole, 12 months and 14 months, respectively, precluded any meaningful return from an investment standpoint. Furthermore, when the broker fees are included, the transactions actually lost money.[1] In other words, as DPW argues, these annuities “had no economic purpose other than qualifying plaintiffs for [Medicaid] benefits.” (DPW Br. at 21.) The majority asserts that nothing requires annuities to be investment vehicles, but, indeed, that is their legitimate, common sense purpose. The majority even notes that they are “widely recognized” as “investment prod *516 ucts.” (Majority Op. at 502) (quoting NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 259, 115 S.Ct. 810, 130 L.Ed.2d 740 (1995)). But these annuities were not investment products.
Aside from the lack of investment purpose, these annuities also were not actuarially sound. As the majority notes, Congress indicated that an annuity will fit within the “safe harbor” if, inter aha, “the annuity ... is actuarially sound (as determined in accordance with actuarial publications of the Office of the Chief Actuary of the Social Security Administration).” 42 U.S.C. § 1396p(c)(l)(G)(ii)(II). The State Medicaid Manual provides that “[i]f the expected return on the annuity is commensurate with a reasonable estimate of the life expectancy of the beneficiary, the annuity can be deemed actuarially sound.... The average number of years of expected life remaining for the individual must coincide■ with the life of the annuity.” Transmittal 64, § 3258.9(B) (emphasis added). Essentially, the Manual indicates that an annuity is “actuarially sound” when the individual’s life expectancy is “commensurate with” or “coincide[s] with” the annuity term. Neither Sanner nor Clay-poole had annuities with terms that coincided with or were commensurate with their life expectancies. In Sanner’s case, her annuity term was 10.55% of her life expectancy and Claypoole’s annuity term was 17.23% of her life expectancy. These percentages are not remotely commensurate with their life expectancies. We need not opine as to what percentage of life expectancy would be sufficient to satisfy this test, but these percentages clearly miss the mark.
The .majority concludes that an annuity with a term that is less than the annuitant’s life expectancy passes the actuarial soundness test. I disagree. If Congress simply wanted to require the annuity terms to be shorter than life expectancy, it could have expressly stated that. Instead, Congress said that annuities must be actu-arially sound, and the State Medicaid Manual defines that term as meaning that annuities must be commensurate with or coincide with life expectancy. Those words must mean something. Moreover, the “commensurate with” requirement makes sense from a policy standpoint. If an annuity term exceeds life expectancy, then it is clearly an attempt to transfer assets to others without facing Medicaid penalties. And similarly, an annuity that is a tiny fraction of life expectancy has no investment purpose and operates only to shield a'ssets. Thus, actuarial soundness is the proper test to avoid both these undesirable situations, by requiring the term to be commensurate with life expectancy.
Because I would hold that the annuities were not for a legitimate economic purpose and were not actuarially sound, I would not reach the question of whether the provision of Pennsylvania law regarding non-assignability, § 441.6(b), is preempted.
Accordingly, I must disagree with the majority and would affirm.

. Even without the fees, the $290.04 "return” on Sanner's investment of $53,700 and the $526.20 "return” on Claypoole’s investment of $84,874.08 represent an annual rate of return on each annuity of approximately .05%, a miniscule return. (Appellants’ Br. 14.)